Filed 6/4/13  Angela M. v. Superior Court CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANGELA M., <br><br>       Petitioner, <br><br>    v. <br><br> THE SUPERIOR COURT OF KINGS COUNTY, <br><br>       Respondent; <br><br> KINGS COUNTY HUMAN SERVICES AGENCY, <br><br>       Real Party in Interest. | F066923 <br><br> (Super. Ct. No. 11JD0055) <br><br><br> **O P I N I O N** |

## THE COURT\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Jennifer Giuliani, Judge.

Angela M., in pro. per., for Petitioner.

No appearance for Respondent.

Colleen Carlson, County Counsel, and Carrie Woolley, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*     Before Cornell, Acting P.J., Gomes, J., and Kane, J.

Petitioner Angela M. in propria persona seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) from the juvenile court's orders issued at a contested 18-month review hearing (Welf. & Inst. Code, § 366.22, subd. (a))[1] terminating her reunification services and setting a section 366.26 hearing as to her five-year-old son Jordan, three-year-old son Hunter and one-year-old son Brett. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Angela is the mother of three young sons, Jordan, Hunter and Brett, the subjects of this writ petition. Angela suffers from bipolar disorder. Jordan suffers from sickle cell anemia.

The Kings County Human Services Agency (agency) first became aware of Angela and the children in June 2011. At that time, Angela was living in a shelter with Jordan and Hunter and was pregnant with Brett and due to deliver. She was not taking her psychotropic medication because of her pregnancy.

In early June 2011, hospital staff raised concerns for the children's well-being when Angela presented several times with then three-year-old Jordan and 15-month-old Hunter asking to be induced. Her behavior was reportedly erratic, bizarre and grandiose and the children, though healthy, were dirty. The police elected not to put a protective hold on the children at that time.

In late June 2011, the agency received a report that Jordan was in sickle cell crisis and that it could be life-threatening. His heart was enlarged, his chest congested and he had a fever. He was also having difficulty breathing and was given oxygen. The reporting party (RP) stated that Jordan needed to be transferred to a higher level facility and that an ambulance had been waiting for an hour to transport him, but Angela refused

---

**1**     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

to let the ambulance leave without her.  According to the RP, Angela was talking to walls, acting strangely by avoiding eye contact and accusing the hospital staff of trying to harm the children.  Finally, after three and a half hours Jordan was taken to the hospital and admitted.  The doctor noted that Angela had not given Jordan his prophylactic antibiotics for the prior month.  She said she could not afford Jordan's medication.

In August 2011, the agency filed a dependency petition on behalf of Jordan, Hunter and newborn Brett alleging Angela's bipolar disorder placed the children at risk of harm.  In support of the allegation, the agency cited Angela's failure to treat her bipolar disorder and her erratic behavior that placed Jordan's life at risk by postponing medical treatment.

In September 2011, the juvenile court ordered the children detained.  In January 2012, the juvenile court exercised its dependency jurisdiction and ordered Angela to participate in mental health services and complete a parenting program.  The children were placed together in foster care.

By the 18-month review hearing in March 2013, Angela had completely complied with her services plan.  Most notably, she attended one-on-one parenting classes for a year, participated in therapy and took her medication.  She also had a one-bedroom apartment where she had been living for a year.

However, despite Angela's best efforts, the agency did not believe she could safely parent the children.  Chief among its concerns were Angela's inability to appreciate and respond to dangerous situations and the children's lack of a bond to her. Hunter, in particular, tried to avoid visits with Angela.  According to the foster mother, he begged her not to make him go.  Once there, Hunter became nauseous each time and sometimes vomited when he entered her home.  When the visits were over, Jordan and Hunter were eager to leave and ran to the county vehicle.

3

In its report for the 18-month review hearing, the agency recommended the juvenile court terminate Angela's reunification services and set a section 366.26 hearing.

Angela, her social worker, and the children's foster mother testified at the contested 18-month review hearing after which the juvenile court heard argument and issued its rulings. The juvenile court commended Angela on her progress but found that it would be detrimental to return the children to her custody. The juvenile court also found that the whereabouts of Jordan and Hunter's fathers were unknown and that the identity of Brett's father was unknown. This petition ensued.

## DISCUSSION

Angela contends, without citation to the record, the social workers falsely reported her home was "filthy" and she "smoked weed." She further contends one of the social workers told her, "I lied to the judge to make you go to court." Thus, she argues, the juvenile court's rulings issued at the 18-month review hearing were error. We disagree.

At the 18-month review hearing, the juvenile court must decide whether it is safe to return the child to the parent's custody or whether it would create a substantial risk of detriment to the child's safety, protection or well-being. (§ 366.22, subd. (a).) If the juvenile court does not return the child to parental custody, it must set a section 366.26 hearing barring circumstances not present here.[2] (§ 366.22, subds. (a) & (b).)

In assessing the risk of detriment, the juvenile court considers the extent to which the parent participated and made progress in the court-ordered treatment plan. (§ 366.22, subd. (a).) However, ultimately, the court's decision hinges on whether the child would be safe in parental custody. (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142.)

---

[2] The juvenile court may continue reunification services beyond the 18-month review hearing if it finds that doing so would serve the child's best interests. (§ 366.22, subd. (b).) Angela does not contend the juvenile court erred in not finding it would serve the children's best interests to continue reunification services.

4

In this case, the juvenile court acknowledged Angela's progress but determined it could not return Angela's sons to her because it was not safe. It was not safe because Angela did not understand how her conduct endangered the children and because they were not bonded to her.

Since Angela does not cite to the record, we cannot address the statements she attributes to the social workers. Nevertheless, we find substantial evidence on this record to support the juvenile court's determination that it would be detrimental to return the children to Angela's custody. Consequently, we affirm its orders terminating her reunification services and setting a section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.